105 P.3d 44 (2004)
In re the Marriage of Lynette KATARE, Respondent,
v.
Brajesh KATARE, Appellant.
No. 53231-6-I.
Court of Appeals of Washington, Division 1.
December 20, 2004.
Publication Ordered January 20, 2005.
*45 Gregory Mann Miller, Seattle, WA, for Appellant.
Catherine Wright Smith, Edwards Sieh Smith & Goodfriend, Gordon Wilson Wilcox, Seattle, WA, for Respondent.
SCHINDLER, J.
Under RCW 26.09.191, a trial court has authority to impose limitations in a parenting plan. Brajesh Katare contends the trial court erred in adopting restrictions designed to prevent him from taking his children out of the United States and limiting his visits to a two-county area in Florida until the youngest child turns five despite its finding that the factors in RCW 26.09.191 did not apply. Brajesh also contends the court abused its discretion when it refused to order additional time with his children if he is unable to travel to Florida and the trial court erred when it required him to pay all the transportation expenses. Lynette Katare cross-appeals and argues the trial court abused its discretion in not finding Brajesh engaged in an abusive use of conflict under RCW 26.09.191(3)(e) and the trial court's findings support imposing the challenged conditions under RCW 26.09.191(3)(g).
The trial court entered inconsistent and contradictory findings regarding its concerns about the risk of abduction. Although the court concluded there was no basis for finding that the factors in RCW 26.09.191 justified imposing restrictions in the parenting *46 plan and Brajesh did not present a serious risk, the court imposed restrictions on Brajesh's visitation because of his threats to take the children to India and the irreversible consequences of abduction. We remand to the trial court to clarify its intent in imposing the passport and foreign-travel restrictions and if appropriate to enter findings to justify limitations it imposed. We conclude the provision in the parenting plan that prohibits Brajesh from removing the children from a two-county area in Florida was an abuse of discretion. We reverse that restriction and remand to amend the parenting plan to allow Brajesh to take the children to Orlando. We affirm the trial court's decision to deny Brajesh's request for make up time. We remand for the trial court to clarify its intent and if appropriate amend the child support order to include findings that support a deviation requiring Brajesh to pay the travel expenses.

FACTS
Lynette and Brajesh Katare were married on November 25, 1995, in Clearwater, Florida, and have two children, Annika, born May 27, 2000, and Rohan, born September 20, 2001.[1] On July 22, 2002, after approximately seven years of marriage, Lynette filed a petition for dissolution.
Brajesh Katare was born and raised in India. He moved to Florida in 1989 to obtain a master's degree. All of his family members live in India. Lynette Katare was born and raised in Florida, and most of her family lives in Florida. Lynette and Brajesh met in Florida in 1992. Lynette was a student and Brajesh was employed in the computer industry. After Lynette and Brajesh married, they continued to live in Florida and in 1996, Lynette earned a master's in business administration. Both Lynette and Brajesh are very close to their families and maintained close contact with them during their marriage, including visits with Lynette's family in Florida, Brajesh's family visiting from India, and Lynette and Brajesh visiting Brajesh's family in India.
Lynette and Brajesh relocated to Washington State in 1999 when Microsoft hired Brajesh. Lynette did not want to move to Washington and leave her family and friends. Brajesh insisted they move and Lynette eventually agreed. Lynette also worked for Microsoft in Washington until she became pregnant with Annika.
Brajesh's job with Microsoft required a great deal of travel.[2] In 2002, he sought a different position within Microsoft because a back injury made traveling difficult. In April 2002, Microsoft offered Brajesh a position in Florida. Brajesh did not accept the job offer. In May 2002, when Microsoft offered Brajesh a two year position in India to supervise local operations, he accepted.
Brajesh and Lynette gave different accounts about the decision to accept the position and move to India. Lynette said Brajesh accepted the job before discussing it with her. She said she expressed concerns about security in India, being isolated and the children's heath. According to Lynette, when she expressed her objections and concerns, Brajesh became very angry and threatened her. Lynette said Brajesh told her he would go to India and take the children with or without her and he would relocate even if it meant divorce. At one point, Brajesh told Lynette she could stay and he would take the children to India.
According to Brajesh, he was excited about the job in India because it was the best option for him in terms of professional advancement and avoiding extensive travel. He said he was frustrated with Lynette's unwillingness to go because he thought some of her concerns were not valid. He denied threatening to take the children to India without her.
As the deadline to move to India in September 2002 got closer, Lynette and Brajesh fought more about the move. In July 2002, Brajesh went on a two-week business trip to India to prepare for the family's move. While Brajesh was gone, Lynette filed for dissolution and obtained an ex parte restraining order. In support of the restraining *47 order, Lynette told the court Brajesh threatened to take the children to India. After Brajesh returned, he and Lynette agreed to a temporary parenting plan that required Lynette and a court-approved supervisor to attend the twice-weekly visits with the children and Brajesh at specific locations.[3] Lynette and Brajesh also agreed to appoint Margo Waldroup to conduct a parenting assessment and make recommendations regarding a parenting plan.
In October 2002, Lynette filed a notice of her intent to relocate with the children to Florida. After Brajesh objected, the relocation decision was postponed to the dissolution trial in June 2003.
In fall 2002, Waldroup completed her parenting assessment and submitted a report with her recommendations. In Waldroup's opinion, the children were close to both parents but they were closer to Lynette as the primary caregiver. Waldroup's report included an extensive discussion of the threats to abduct the children and the risk of abduction. While Brajesh denied making threats, Waldroup stated Lynette's allegation that Brajesh threatened to abduct the children was corroborated by two witnesses. But in Waldroup's opinion, no evaluation could predict whether Brajesh would abduct the children.
Waldroup recommended that the twice-weekly visitation schedule established in the temporary parenting plan continue for a few months before adding overnight visits, and that Lynette no longer attend the visits. If Lynette was allowed to relocate to Florida with the children, Waldroup recommended Brajesh have three consecutive days with the children each month, adding staying overnight during the three day periods after Rohan turned two. Waldroup recommended Brajesh's vacation time coincide with school vacations when Annika reaches school age. While the monthly visits would occur in Florida, the vacation time with the children could occur in Florida or Seattle. Waldroup also recommended that the current requirement of supervised visitation not be lifted until the children's passports were secured, and suggested that perhaps Brajesh's and the children's passports could be added to a watchlist.
Brajesh moved to modify the temporary parenting plan to eliminate supervision based on Waldroup's report. His motion was granted subject to the requirement that his attorney hold his passport during his visitation.
A five day long trial was held in June 2003. The primary issues at trial were Lynette's intent to relocate with the children to Florida and Lynette's request that the court impose restrictions in the parenting plan. Several people testified, including the parties, Margo Waldroup, the parenting evaluator, and Marya Barey,[4] the Director of Family Court Services.
Lynette testified Brajesh repeatedly threatened to take the children to India without her and Brajesh was still planning on moving to India. Lynette also testified that during discovery, Brajesh requested copies of the applications for the children's passports and Indian tourist visas, copies of passport pages and Indian tourist visas from their passports, and copies of the children's immunization records. Lynette also said she found an application for an Indian PIO card (similar to a U.S. "green card") on Brajesh's computer. Lynette argued this evidence showed Brajesh was planning to take the children to India. Lynette also said she was concerned about the possibility that Brajesh might abduct the children to India because India is not bound by the Hague Convention on International Child Abduction, so it would be difficult if not impossible for her to get the children back to the United States. Brajesh denied making threats. Brajesh said the job in India was no longer a possibility *48 because the role he would have played there was no longer necessary, but he acknowledged that he was supervising employees there and traveling back and forth several times a year. Waldroup testified consistent with her report about Brajesh's threats to abduct the children and her opinions and recommendations.
The trial court carefully analyzed the statutory factors for relocation and decided Lynette should be allowed to relocate to Florida with the children.[5] The court followed Waldroup's recommendations and adopted a parenting plan that established a residential schedule allowing Brajesh three consecutive days, including overnights, each month for residential time with the children in Florida. The court imposed limitations on Brajesh's residential time with the children designed to prevent Brajesh from taking the children to India, including: (1) prohibiting Brajesh from taking the children out of a two-county area in Florida until Rohan turns five, and prohibiting him from taking the children out of the country until they turn 18; (2) prohibiting Brajesh from holding or obtaining certain documents, including passports and birth certificates, for the children; (3) requiring Brajesh to surrender his passport to a neutral third party for the duration of each visit; and (4) requiring Brajesh to notify Lynette and the court of any change in his citizenship status.
In the decree, the court awarded all of the community's 625,000 air miles to Brajesh taking into account that he may use some of the miles to travel to Florida for visitation time with the children. In the child support order, the court allocated the basic support obligation 65 percent to Brajesh and 35 percent to Lynette, but required Brajesh to pay for all the travel expenses until Rohan turns five.
In his motion to reconsider, Brajesh challenged the limitations on the location of his residential time and the passport controls. Brajesh also asked the court to add a provision to the parenting plan that would allow him to make up missed visits and to apportion the transportation expenses for visitation in Florida in the same proportion as the standard support. The court denied Brajesh's motion for reconsideration and his request to order make up visitation time and to apportion travel expenses.
Brajesh appeals the provisions in the parenting plan that impose conditions on visitation with his children in Florida, the child support order requiring him to be solely responsible for transportation expenses until Rohan turns five, and denial of his request for make up visitation time if he is unable to travel to Florida for a scheduled visit.
Lynette files a conditional cross-appeal and argues the court erred when it found no RCW 26.09.191 factors were present.[6]

ANALYSIS

Parenting Plan Provisions
Brajesh argues the trial court erred when it imposed limitations on his residential time with Annika and Rohan. He contends there was no legal basis to impose the limitations because the court expressly found the factors to justify imposing restrictions under RCW 26.09.191 did not apply. He also contends that because the court found there was "no serious threat" that he would abduct the children, the court's findings do not support limitations or restrictions under RCW 26.09.191.[7]
We review a trial courts decision on the provisions of a parenting plan for abuse of discretion. In re the Marriage of Littlefield, 133 Wash.2d 39, 46, 940 P.2d 1362 (1997). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. Littlefield, 133 Wash.2d at 46-47, 940 P.2d 1362. A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable *49 grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. Id. at 47, 940 P.2d 1362.
Relying on Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), In re Custody of Smith, 137 Wash.2d 1, 15, 969 P.2d 21 (1998), and State v. Ancira, 107 Wash.App. 650, 654, 27 P.3d 1246 (2001), Brajesh argues the limitations in the parenting plan violate his fundamental liberty interest in the care, custody and control of his children because no compelling interest for restricting his fundamental rights is supported by the record. But the cases Brajesh relies on do not support his argument that a parenting plan that complies with the statutory requirements to promote the best interests of the children raises an issue of constitutional magnitude or violates a parent's constitutional rights.[8]
Brajesh argues the limitations imposed on his residential time violate the requirements of the Parenting Act. He contends the limitations were imposed without regard to the factors in RCW 26.09.187(3) and the best interests of the children under RCW 26.09.002, and they are not justified under RCW 26.09.191.
The trial court must consider a number of provisions in the Parenting Act in adopting a parenting plan, including the guidelines set forth in RCW 26.09.187(3), which must be read in conjunction with RCW 26.09.184 (setting forth the objectives and required contents of a permanent parenting plan), RCW 26.09.002 (stating the policy of the Parenting Act), and RCW 26.09.191 (setting forth limiting factors which require or permit restrictions upon a parent's actions or involvement with a child). Littlefield, 133 Wash.2d at 50, 940 P.2d 1362.
Brajesh contends that under RCW 26.09.002, the existing pattern of interaction between a parent and child may only be altered when specific findings establish that the changes are necessary to protect the child. He claims the limitations in the parenting plan are unjustified departures from the previous patterns of his interaction with his children.
RCW 26.09.002 provides, in part:
[T]he best interests of the child is ordinarily served when the existing pattern of interaction between a parent and child is altered only to the extent necessitated by the changed relationship of the parents or as required to protect the child from physical, mental, or emotional harm.
The Court in In re the Marriage of Kovacs, 121 Wash.2d 795, 854 P.2d 629 (1993), rejected the argument that the existing pattern of interaction may be changed only when it is harmful to the child. Instead, the Court held that when setting a residential schedule under RCW 26.09, the best interests of the child is to be determined with reference to the seven factors in RCW 26.09.187(3)(a).[9] *50 There is no requirement in RCW 26.09.002 for specific findings. The limitations do not violate RCW 26.09.002.
Brajesh contends a court may impose restrictions or limitations on a parent's residential time only if the court expressly finds there are factors or conduct that is adverse to the best interest of the child. He argues that because the trial court concluded no RCW 26.09.191 factors were present, there was no legal basis to impose limitations on his residential time.
Whether RCW 26.09.191 factors must be present before limitations may be imposed on residential provisions of a parenting plan is a question of statutory interpretation. Statutory interpretation is a question of law this court reviews de novo. Berger v. Sonneland, 144 Wash.2d 91, 104-05, 26 P.3d 257 (2001).
RCW 26.09.191(1) and (2) are mandatory provisions that require the trial court to restrict a parent's conduct or involvement with the child, while RCW 26.09.191(3) is a discretionary provision that permits a trial court to restrict a parent's actions. RCW 26.09.191(1) prohibits a court from requiring mutual decision-making or dispute resolution other than court action if certain factors are present. RCW 26.09.191(2) requires a court to limit a parent's residential time with a child if any factors listed under that section are present. RCW 26.09.191(3) allows a court to limit any provision of a parenting plan if the court finds a parent's involvement or conduct may have an adverse affect on the child's best interest and any of the factors in RCW 26.09.191(3) are present.[10] Under RCW 26.09.191(3):
A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:
(a) A parent's neglect or substantial nonperformance of parenting functions;
(b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;
(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;
(d) The absence or substantial impairment of emotional ties between the parent and the child;
(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;
(f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or
(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.
We conclude the court may not impose limitations or restrictions in a parenting plan in the absence of express findings under RCW 26.09.191.[11] We also conclude that any limitations or restrictions imposed must be reasonably calculated to address the identified harm.
Lynette argues the evidence established Brajesh was planning to remove the children *51 from the country. Lynette testified Brajesh repeatedly threatened to take the children to India without her and Brajesh was still planning on moving to India. Lynette also testified that while their dissolution was pending, Brajesh requested copies of documents he would need to obtain immigration documents for the children. Lynette said she was especially concerned about the possibility that Brajesh might abduct the children to India because India is not bound by the Hague Convention on International Child Abduction.
Brajesh denied making threats. He testified that the job in India was no longer available but he was supervising employees there and traveling back and forth several times a year.
Waldroup addressed Brajesh's threats to take the children to India and the risk of abduction in the materials she submitted to the court and in her testimony at trial. Waldroup's report said:
No evaluation of this type can tell whether the father will abduct the children. I am not aware of any criteria that can predict if such would occur. The Katare's [sic] situation is somewhat unusual in that there is not only the allegation of abduction but corroboration of two witnesses hearing the threat that Brajesh would take the children to India "with our [sic] without" their mother. As Brajesh denies these statements it is impossible to evaluate whether the statements were said in crisis to pressure the mother to move to India, rather than being his literal intent or whether Brajesh truly intended to remove the children from the country without the mother's consent.[12]
Waldroup's recommendations also addressed the risk of abduction and restrictions that should be imposed.
There is no way to know if the father is at risk of taking the children to India and therefore I cannot recommend restrictions, or lack of them, based on the allegations. I do believe the father made the threats to take the children to India without Lyn, and had likely done so in an effort to coerce Lyn into moving to India. Whether he would take the children at this time to "punish" Lyn remains unknown.
The current restrictions of supervised visitation should certainly not be lifted until the children's passports have been secured and the attorneys should pursue whether the father and children's passports [sic] numbers can be placed on a watch list with the appropriate agency (Customs and/or Immigration). Consideration could also be given to the father posting a bond so that should abduction occur, the mother would have access to enough fund [sic] to retrieve the children from India.[13]
Waldroup testified that she consulted colleagues and research literature regarding the risk of abduction and concluded there were no criteria to predict whether someone who threatened to abduct children would actually do so. Waldroup said that because she was unable to predict the likelihood that Brajesh would abduct the children, the court had to decide whether the risk of abduction was significant enough to impose the restrictions she recommended.
Lynette also presented evidence and argued that Brajesh engaged in a pattern of emotional abuse of a child that required restrictions under RCW 26.09.191(1)(b) and that Brajesh's involvement or conduct may have an adverse effect on the children's best interests permitting restrictions under RCW 26.09.191(3) because of his negligent or substantial nonperformance of parenting functions (RCW 26.09.191(3)(a)), the absence or substantial impairment of emotional ties between him and the children (RCW 26.09.191(3)(d)), and his abusive use of conflict (RCW 26.09.191(3)(e)).
The court in its oral decision found Brajesh had not engaged in a pattern of emotional abuse of a child or abusive use of conflict under RCW 26.09.191. The court then addressed the risk of abduction and whether restrictions should be imposed to prevent Brajesh from taking the children to India.

*52 I gave a long and careful consideration to the issue of the risk of abduction and confess today being concerned about this. I'm not persuaded, based on all the evidence presented, including that of the expert witnesses who were called to testify, that Mr. Katare presents a serious threat of abducting the children. Nonetheless, if I'm wrong on this the consequences are incredibly serious and I'm mindful about that. I'm going to impose some restrictions in the parenting plan that will be designed to address this issue, and I hope that everything that has been brought to this Court, which I think indicates that, [sic] there is not a serious risk of abduction [sic] turns out to be the truth.[14]
The trial court entered findings and conclusions regarding the specific RCW 26.06.191 sections Lynette raised, including RCW 26.09.191(1)(b) and RCW 26.09.191(3)(a), (d) and (e), but it did not address the risk of abduction under RCW 26.09.191.[15] In the parenting plan, the court found there was no basis for restrictions under RCW 26.09.191. The Parenting Order provides:
II. BASIS FOR RESTRICTIONS
Under certain circumstances, as outlined below, the court may limit or prohibit a parent's contact with the children and the right to make decisions for the children.
2.1 PARENTAL CONDUCT (RCW 26.09.191(1), (2)). Does not apply.
2.2 OTHER FACTORS (RCW 26.09.191(3)). Does not apply.[16]
Although the trial court found Brajesh "appears to present no serious threat of abducting the children,"[17] it imposed limitations in the parenting plan to prevent Brajesh from taking the children to India. While Brajesh focuses on the court's findings that he presents no serious threat of abducting the children, the court also entered findings that limitations were warranted to prevent Brajesh from abducting the children based on the evidence.
2.20.1 India is not a signator to the Hague Convention on International Child Abduction.
2.20.2 Based on the evidence, including the testimony of expert witnesses, the husband appears to present no serious threat of abducting the children. Nonetheless, under the circumstances of this case, given the ages of the children, the parties' backgrounds, ties to their families and communities, and history of parenting, the consequences of such an abduction are so irreversible to warrant limitations on the husband's residential time with the children, including location of exercise of residential time, surrender of his passport, notification of any change of his citizenship status, and prohibition of his holding or obtaining certain documents (i.e., passports, birth certificates) for the children. The mother shall retain the children's passports.[18]
The court also found "[l]imitations on the parents' residential time with the children to a particular location is [sic] also justified by the age of the children."[19]
These findings support restrictions under RCW 26.09.191(3)(g). But the court's finding *53 in the parenting plan that there is no basis to impose restrictions under RCW 26.09.191 creates an ambiguity. The trial court has authority to impose limitations or restrictions under RCW 26.09.191(3)(g) to prevent the risk of abduction. Brajesh does not dispute that the restrictions imposed by the parenting plan would be permissible if RCW 26.09.191(3) factors were present. But he contends the trial court's conclusion that there was no basis to impose restrictions under RCW 26.09.191 cannot be disturbed on appeal. In the absence of some indication in the record that the court's failure to make a specific finding was intentional, it is inappropriate to treat the absence of a finding as the equivalent of a negative finding on the issue. Douglas Northwest, Inc. v. Bill O'Brien & Sons Construction, Inc., 64 Wash.App. 661, 682, 828 P.2d 565 (1992). Here, the trial court's findings of fact only addressed the specific portions of RCW 26.09.191(2) and (3) raised by Lynette. We do not interpret the general statement in the parenting plan that RCW 26.09.191(3) "does not apply" as a finding on whether the risk of abduction is a factor justifying limitations under RCW 26.09.191(3)(g).[20]
Although the trial court stated Brajesh "appears to present no serious threat of abducting the children,"[21] it addressed concerns about the risk of abduction and imposed limitations to prevent abduction. Whether the court found there was a risk of abduction that justified the imposition of limitations is at least ambiguous. Indeed, such a finding is implicit in the trial court's discussion of the risk of abduction, the findings it made and the limitations it imposed. Except for the inconsistent entry that states the RCW 26.09.191 basis for restrictions does not apply, the court's findings support restrictions under RCW 26.09.191(3)(g). Rather than speculate, we remand for the trial court to clarify the legal basis for its decision to impose restrictions to prevent Brajesh from taking the children to India and if appropriate to make the necessary findings.[22]
Unlike the passport requirements and the prohibition on removing the children from the United States, we conclude the prohibition on removing the children from a two-county area in Florida until Rohan turns five is not logically related to the risk of abduction. Brajesh argues he should be allowed to take the children outside the two-county area to Orlando to visit Disney World. The apparent source of the two-county limitation is Lynette's proposed parenting plan. The court's stated reason for the two-county restriction, namely, that the children were too young to travel any farther during a three day visit, is not supported by any evidence in the record. We conclude the two-county limitation was based on untenable grounds. On remand, the court shall allow Brajesh to take the children to Orlando during his visits with them in Florida.

Make Up Visitation Time
Brajesh argues the trial court abused its discretion when it denied his request on reconsideration to add a provision to the parenting plan to allow him to make up visitation time when he is unable to travel to Florida for his regularly scheduled visitations. Brajesh asked the court to provide for a five day visitation (including overnights) in the month following the missed visit, and he agreed to limit the make up clause to two years, until Annika is in school.[23] The trial *54 court denied Brajesh's request.[24]
Brajesh contends that because the court found relocation would have a severe impact on his ability to bond with his children, and because it is in the children's best interests to learn about their Indian cultural heritage, it was an abuse of discretion to deny his request for make up visits. But there was undisputed evidence in the record that five day visits would not be in the children's best interests, especially within the first two years after entry of the parenting plan.[25] The trial court did not abuse its discretion when it denied the request for a make up time provision.

Long-Distance Travel Expenses
Brajesh argues the trial court erred in ordering him to pay all the costs for long-distance travel to visit his children in Florida until Rohan turns five. In the child support order, each parent was ordered to pay the proportional share of expenses, 65 percent to Brajesh and 35 percent to Lynette. Brajesh contends that under RCW 26.19.080(3), long-distance travel expenses must be allocated in the same proportion as the basic child support calculation.
Long distance travel expenses are considered extraordinary expenses not accounted for in the basic child support obligation. RCW 26.19.080(1). Under RCW 26.19.080(3), "[t]hese [extraordinary] expenses shall be shared by the parents in the same proportion as the basic child support obligation." This statutory language is mandatory. In re Paternity of Hewitt, 98 Wash.App. 85, 988 P.2d 496 (1999).[26] Once the trial court determines that extraordinary expenses are "reasonable and necessary,"[27] it is required to allocate them in proportion with the parents' income. Murphy, 85 Wash.App. at 349, 932 P.2d 722.[28]
This court recognizes an exception to the rule requiring allocation in the same proportion as the basic child support obligation where findings support a deviation. In re Marriage of Casey, 88 Wash.App. 662, 967 P.2d 982 (1997). In Casey, the trial court entered a child support order that deviated from the basic support obligation for the mother and imposed 100 percent of the travel expenses on the father because of a significant disparity in the parents' incomes. On appeal, this court affirmed the child support order, including its allocation of 100 percent of the travel costs to the father, because the trial court made the findings to support the deviation from the basic support obligation.
Here, in the dissolution decree, the trial court awarded all of the community property air miles to Brajesh. "The husband is awarded as his separate property the following property:... All air miles in his name, taking into account that he may use some of those miles to travel for his residential time with the children."[29] The Order of Child Support states that the amount ordered does not deviate from the standard calculation and that a deviation was not requested. But the *55 court ordered Brajesh and Lynette to pay for day care and transportation expenses in proportion to their share of income, except that "[t]ransportation expenses for the children's residential time with the father prior to Rohan's 5th birthday shall be the father's obligation using the air miles he is awarded in the Decree of Dissolution and accrues due to his work."[30] In its oral decision the court explained why it struck the reference to air miles: "If he wants to use those air miles, that is great. But he doesn't have to use them."[31]
Below, Brajesh challenged the court's ruling on travel expenses and argued that, under Hewitt,"to the extent that the father has to travel to Florida because the children can't come here, that the mother would share in those travel expenses. If he can't use air miles, she should share 65/35 in his expense."[32] The court responded,
I don't have any evidence before me that he can't use the air miles. Everything that came before me during trial indicated that that worked just great for him. And that is why all the miles were awarded to him so he had access to them. So I am not going to change that with regard to his transportation. And I made a specific finding with regard to that.[33]
On appeal, Brajesh argues the trial court erred when it imposed 100 percent of the transportation expenses on him because, under RCW 26.19.080(3), a court does not have discretion to deviate from the standard apportionment for extraordinary expenses. Notably absent from Brajesh's argument, however, is any reference to the trial court's decision to award to him of all of the community air miles to travel to Florida to visit the children.
Although the trial court did not make findings to deviate from the basic support obligation in the child support order, it made findings in the dissolution decree that would support a deviation.[34] In the dissolution decree, the trial court found the community owned 625,000 air miles, which the court awarded to Brajesh, "taking into account that he may use some of those miles to travel for his residential time with the children."[35] Although the court's findings in awarding all the community property air miles to Brajesh support a deviation in the child support order, the child support order does not contain these findings. We remand for the trial court to clarify whether it intended to deviate in the child support order from the requirement that each parent pay a proportionate share of the travel expenses.

CONCLUSION
On remand, the trial court should clarify its intent in imposing the passport and foreign-travel restrictions and whether the risk of abduction was a factor justifying limitations under RCW 26.09.191(3)(g). We conclude the trial court's decision to prohibit Brajesh from removing the children from the two-county area in Florida is an abuse of discretion. We reverse and remand for the court to amend the parenting plan to allow Brajesh to take his children to Orlando. We affirm the trial court's decision to deny Brajesh's request to make up missed visitation time. Finally, we remand for the trial court to clarify whether it intended to deviate from the requirement that each parent pay a proportionate share of the travel expenses in the child support order.
WE CONCUR: BECKER and APPELWICK, JJ.
NOTES
[1] We refer to the Katares by their first names to ensure clarity. No disrespect is intended.
[2] According to testimony at trial, Brajesh traveled approximately 102 out of 365 days in 2002.
[3] The week after the temporary parenting plan was entered, Brajesh moved to amend the temporary parenting plan to allow his visits to occur anywhere in King County, including at his apartment, to exclude Lynette from the visits, and to order her to facilitate the scheduled phone conversations with the children. The court granted the motion to expand the location for Brajesh's visits to a portion of King County and set a schedule to reduce the number of visits Lynette could attend.
[4] Barey testified by deposition.
[5] The court entered an order setting forth detailed findings to support the statutory factors for relocation.
[6] Lynette also argues that the trial court's findings support imposing the restrictions under RCW 26.09.191(3)(g).
[7] CP at 168.
[8] Similarly, Brajesh has failed to cite any authority that supports his contention that the clear and convincing standard of proof should be met before a trial court can impose any limitations on a parent's exercise of residential time. (He cites only Santosky v. Kramer, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (clear and convincing evidence was required for termination of parental rights), Nguyen v. State Dep't of Health Medical Quality Assurance Comm'n, 144 Wash.2d 516, 523-27, 29 P.3d 689 (2001)(clear and convincing evidence required when loss of medical license is at stake), and In re Parentage of C.A.M.A., 120 Wash.App. 199, 84 P.3d 1253 (2004) (clear and convincing evidence standard applies in third-party visitation context).) Here, Brajesh's parental rights were not terminated and his residential time with his children was not limited; the limitations imposed were intended to protect the best interests of the children and do not raise constitutional issues.
[9] The seven factors are:

(i) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting functions relating to the daily needs of the child;
(ii) The agreements of the parties, provided they were entered into knowingly and voluntarily;
(iii) Each parent's past and potential for future performance of parenting functions;
(iv) The emotional needs and developmental level of the child;
(v) The child's relationship with siblings and with other significant adults, as well as the child's involvement with his or her physical surroundings, school, or other significant activities;
(vi) The wishes of the parents and the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule; and
(vii) Each parent's employment schedule, and shall make accommodations consistent with those schedules.
RCW 26.09.187(3)(a).
[10] While under the mandatory provisions of RCW 26.09.191(1) and (2) the court cannot allow dispute resolution and decision making provisions, the same result is not required for the discretionary factors in RCW 26.09.191(3). See, e.g., RCW 26.09.187(1) (limiting dispute resolution procedures where any .191 factor applies), RCW 26.09.187(2) (requiring consideration of the presence of any .191 factor in determining what type of decision-making authority to provide). For factors under RCW 26.09.191(3), the trial court has the discretion to impose dispute resolution and decision-making provisions that are in the best interests of the child.
[11] In her cross-appeal, Lynette contends the trial court was not required to enter RCW 26.09.191 findings because the limitations it imposed are not .191 restrictions. She relies on the boilerplate language from the parenting plan form to argue RCW 26.09.191 applies only where a court limits or prohibits a parent's contact with the children and the right to make decisions for the children. But RCW 26.09.191 is not so limited.
[12] Exhibit 25 at 18.
[13] Exhibit 25 at 19.
[14] RP (July 7, 2003) at 10.
[15] Lynette argues in her cross appeal that the trial court erred in finding Brajesh did not engage in the abusive use of conflict for purposes of RCW 26.09.191(3)(e). Lynettes argument consists wholly of a recitation of the evidence that would support a finding in her favor. But she does not dispute that the courts finding to the contrary was supported by substantial evidence. Although Lynette presented evidence to support her argument, Brajesh presented contrary evidence and the court made a credibility determination in his favor. Credibility determinations are the province of the trier of fact and will not be disturbed on appeal. In re Marriage of Olivares, 69 Wash.App. 324, 336, 848 P.2d 1281 (1993).

Lynette also assigns error to the trial court's findings that Brajesh did not engage in a pattern of emotional abuse under RCW 26.09.191(1)(b) and that he did not have a long-term emotional impairment under RCW 26.09.191(3)(b), but she does not present any argument to support these assignments of error. This argument is therefore abandoned. See RAP 10.3(a)(5).
[16] CP at 615.
[17] CP at 168.
[18] CP at 168.
[19] CP at 168.
[20] CP at 615.
[21] CP at 168.
[22] Lynette cites out of state cases In re the Marriage of Long v. Ardestani, 241 Wis.2d 498, 624 N.W.2d 405 (2001), Abouzahr v. Matera-Abouzahr, 361 N.J.Super. 135, 824 A.2d 268 (2003), Soltanieh v. King, 826 P.2d 1076 (Utah App.1992), and Bergstrom v. Bergstrom, 320 N.W.2d 119 (N.D.1982), as examples of cases that have held the best interests of the child governs whether conditions should be placed on a parent's residential time where there is a risk of abduction to a non-Hague Convention country. In all four cases the dispositive factor was the trial court's factual finding about the basis for imposing the restrictions. Where the likelihood of abduction was greater, based on the factual circumstances in the case, the courts imposed restrictions to prevent abduction. See, e.g., Soltanieh and Bergstrom. Where abduction was unlikely, the courts declined to impose preventive measures. See, e.g., Abouzahr and Long.
[23] The proposed provision reads:

In the event that the father is unable to have residential time during one of the monthly three-day periods provided for above in this Parenting Plan, he may have make-up time constituting two additional overnights, for a total of five days, provided that this make-up time shall take place the month following the month when residential time was missed.
CP at 582.
[24] See CP at 630-31 (order denying reconsideration in part), 637-38 (final parenting plan).
[25] Waldroup testified that because the children were so young, it would be detrimental for them to be away from their primary caretaker (Lynette) for long periods of time. She said that if the children were away from their mother for more than a few days, they would start to feel abandoned and angry and would start acting out. Waldroup also said that because Rohan was so young (20 months at the time of trial), he did not have the verbal ability to understand reassuring words and would therefore have a hard time processing separation from his mother for more than a couple of days at a time.
[26] See also Murphy v. Miller, 85 Wash.App. 345, 349, 932 P.2d 722 (1997); In re Marriage of Scanlon, 109 Wash.App. 167, 34 P.3d 877 (2001), review denied, 147 Wash.2d 1026, 62 P.3d 889 (2002).
[27] RCW 26.19.080(4) grants trial courts the discretion to determine the "reasonableness and necessity" of extraordinary expenses.
[28] The rule requiring apportionment of long-distance travel expenses applies where the parent must travel to visit the child because the child is too young to travel. Hewitt, 98 Wash.App. at 89, 988 P.2d 496.
[29] CP at 172.
[30] CP at 147 (strikethrough in original).
[31] RP 7/30/03 at 33.
[32] RP 7/30/03 at 34.
[33] RP 7/30/03 at 34.
[34] This approach is consistent with this court's suggestion in In re Marriage of Stenshoel, 72 Wash.App. 800, 866 P.2d 635 (1993), that in some cases it may be appropriate to consider property distribution payments pursuant to dissolution order a resource to be taken into account when determining whether to deviate from a child support schedule.
[35] CP at 172.