[No. 35944-4-I.   Division One.   March 17, 1997.]
BONNIE MURPHY, *Respondent*, v. ROGER MILLER, *Appellant*.

---

*David G. Porter*, for appellant.
*Kathryn E. Berger*, for respondent.

AGID, J. — A parenting plan established that Roger Miller was to have visits with his son, Garth, on Wednesdays and every other weekend. At a review hearing, Miller asked the trial court to give him joint custody, and the court refused. This ruling was correct, because even though Miller had moved to Maine since the first hearing, a change to joint custody would have been a modification of the original order. A modification required Miller to show that there had been a substantial change in circum-

stances and the change was in Garth's best interest, neither of which Miller established. The court also properly refused to enter Miller's proposed findings and conclusions because they did not reflect the court's rulings. The trial court did err, however, when it ordered Miller to pay all transportation costs if he lived more than 90 miles from Whatcom County. By statute, the parties must share those costs in the same proportion as the basic child support obligation. We therefore vacate that portion of the court's order.

## STATEMENT OF FACTS

Roger Miller established in a parentage action that he was the father of Bonnie Murphy's one-year-old son, Garth. A parenting plan provided that Garth's primary residence was to be with Murphy. While Garth was of preschool age, Miller was to have him all day and night on Wednesday, every other weekend, and on every night that Murphy was working.[1] If Miller missed a visit, Miller and Murphy were to arrange a time to make it up. The court ordered Miller to pay $294 per month in child support and $1,280 for back support. The court also ordered that a review hearing be held in six months to determine whether the residential schedule should be adjusted.

About three-and-a-half months after the parenting plan was entered, Miller and Murphy signed a "joint custody" agreement changing the court's support and visitation order:

> Father agrees to pay $150.00 monthly for child support directly to the mother.

> Each parent agrees on joint custody for the permanent parenting plan.

> Each parent shall be allowed equal time, joint custody, with the child. The parents will make arrangements monthly: working, holidays, vacations, etc. Parents will do their best to

---

[1]Soon after the orders were entered, Murphy quit working nights.

take the child while the other is working. Parents will be prompt at exchange or make prior arrangement. Travel arrangement goes to the parent getting the child (flexible).

. . . .

[W]e are signing on our own free will and agree this [sic] the best for Garth.

On the same day the parties signed the joint custody agreement, Murphy agreed to waive all back child support Miller owed her in exchange for Miller's giving her $500 to buy a car. After that, Murphy accepted $150 child support payments from Miller.

Miller was not present at the review hearing, but he submitted a memorandum in which he asked the court to order that Garth spend six months with each parent. Miller claimed the schedule reflected the parties' wishes as set forth in the joint custody agreement. He explained the change would be appropriate because he had moved from Washington to Maine, Garth was accustomed to spending large blocks of time with each parent, and distance was the best way to lessen the conflicts between him and Murphy.

Murphy testified that she did not agree to the terms of the joint custody agreement, either at the time of the hearing or when she signed it. She claimed she signed the agreement only because she was desperate for child support and Miller wouldn't pay if she didn't sign. She did not want to comply with the agreement because it meant Miller could come and go as he pleased without giving any indication of when he would take Garth.

The judge refused to enforce the parties' agreement and affirmed the parenting plan it had originally ordered, with some minor modifications. The court eliminated a provision in the original plan allowing Miller to make up missed visits because it found the haphazard way Miller had made up visits in the past was not in Garth's best interest. The court also ordered Miller to pay all transpor-

tation costs if he lived more than 90 miles from Whatcom County. Any further modifications to the parenting plan were to be by court order rather than through mediation.

Miller moved for reconsideration, claiming the court should have enforced the joint custody agreement and asking the court to enter his proposed findings, conclusions and parenting plan. The court denied the motion.

## The Trial Court Erred When It Ordered Miller To Pay The Entire Cost Of Transportation

Courts are to base child support in parentage actions on the schedules and standards found in RCW 26.19. RCW 26.26.130(5). Under RCW 26.19.080(4), the court "may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation." Murphy claims that it was within the court's discretion to determine amounts needed in excess of the basic support obligation and, therefore, the court could order Miller to pay all the costs of long-distance transportation.

But the court has the discretion only to determine whether long-distance transportation costs are needed and whether a particular amount for those costs is reasonable. Once the court determines that the costs are necessary and reasonable, the parties must share them in the same proportion as the basic support obligation:

> Day care and special child rearing expenses, such as tuition and long-distance transportation costs to and from the parents for visitation purposes, are not included in the economic table. These expenses shall be shared by the parents in the same proportion as the basic support obligation.

RCW 26.19.080(3).

Because this provision is mandatory, we and the

trial court must enforce it.[2] To hold otherwise would render the language in the statute meaningless. This portion of the court's decision is vacated. *See In re Marriage of Shryock*, 76 Wn. App. 848, 852, 888 P.2d 750 (1995) (modifications vacated because trial court lacked authority to modify prior custody decree without complying with statutory criteria).

The remainder of this opinion has no precedential value, so it shall not be published.

COLEMAN and GROSSE, JJ., concur.

---

[2]This decision is in accord with this court's unpublished opinion in *D.C.G. v. M.D.P.*, No. 35537-6-I (Wash. Ct. App. Aug. 19, 1996), which was discussed during oral argument.