[No. 50128-3-I.   Division One.   July 14, 2003.]

*In the Matter of Brianna Yeamans.*

DAVID YEAMANS, *Appellant*, v. ANGIE KNOWLES, *Respondent*.

*Matthew I. Cooper*, for appellant.

*Steven B. Shea*, for respondent.

COLEMAN, J. — David Yeamans appeals a trial court order modifying a parenting plan. We decide that the trial court did not abuse its discretion when it required that Yeamans' daughter be transported by air from Pullman to Seattle for her monthly trips to visit her mother. But the trial court erred when it failed to allocate the long distance travel and child care expenses in proportion with the parents' basic support obligations. The trial court lacked the authority to deviate from the apportionment of the extraordinary expenses without first deviating from the basic support obligation. We reverse and remand those portions of the order.

## FACTS

David Yeamans and Angie Knowles are the parents of Brianna, age eight. Paternity was established through a parentage action. Knowles is a recovering alcoholic and has had limited ability, due to her alcoholism, to care for Brianna until recently. Yeamans has been the primary residential parent since Brianna was three years old.

Before Yeamans became the primary residential parent, Knowles' former in-laws, Lew and Lynda Gruber, cared for Brianna at their home in Bothell. The Grubers are not related to Brianna. After Brianna turned three and began living with Yeamans in Des Moines, Brianna continued to have substantial contact with the Grubers. They were court-appointed supervisors of Knowles' bimonthly weekend residential time. As a practical matter, Knowles' residential time with Brianna has been exercised by the Grubers at their home.

Yeamans' relationship with the Grubers has been quite contentious. The Grubers have sought continued access to

Brianna, but Yeamans has resisted their efforts due to his concerns about Brianna's safety while with them. The trial court found that the Grubers are heavy smokers and have a history of alcohol abuse, Brianna has sustained several avoidable injuries while in their care, such as cigarette burns, and two of the Grubers' sons have been convicted of violent felonies (one of their sons, Randy Knowles, who is Knowles' ex-husband, was imprisoned for a severe assault on Knowles). The Grubers also assisted their son, Randy, to forcibly remove his child, Brianna's half-sister, from Knowles' custody. The trial court found that the conflict between Yeamans and the Grubers has had an extremely detrimental effect on Brianna.

In 1999, Yeamans moved to Pullman. He requested modification of the parenting plan to reflect the changed circumstances. The trial court granted the modification, but found that Yeamans' preferred reason for moving—to get a promotion—was "not convincing" because that job amounted to more of a "lateral transfer," similar jobs were available in Puget Sound, and at the time of trial, he was planning on leaving that job. It found that Yeamans more likely moved to minimize conflict between himself and the Grubers. The court, however, also expressed concerns about the Grubers' contentious behavior and found them marginally qualified as caregivers. Nevertheless, Brianna had a bond with them due to the substantial time she spent with them during her early years. Brianna had also bonded with her half-siblings who lived with and/or spent time with the Grubers.

At the end of the modification trial, the trial court concluded that the Grubers' supervision of Knowles' visits was no longer necessary in light of Knowles' steps toward alcoholism recovery. But because Knowles' recovery was still in progress and Brianna's well-being when with the Grubers was uncertain, the court imposed several restrictions on the Grubers. Those restrictions prohibited the Grubers from smoking near Brianna or taking her to their house. The court also granted Yeamans the right to object to

Knowles' use of the Grubers for no-cost day care for Brianna while Knowles works, provided that he pay 100 percent of the cost for alternate child care. But if Knowles decides to switch day-care providers, Yeamans and Knowles must bear the cost of such care in proportion with their monthly net incomes, 70 percent and 30 percent respectively. In modifying the parenting plan, the trial court also ordered that Brianna be flown to Sea-Tac from Pullman or Spokane. Previously, Yeamans had driven Brianna halfway, to Vantage, where Brianna was picked up by the Grubers. The trial court also ordered Yeamans to pay for 100 percent of the long distance travel expenses up to $350, with any excess to be paid by Knowles.

Yeamans contends on appeal that the trial court abused its discretion when it ordered him to pay 100 percent of the long distance travel expenses and 100 percent of the child care expenses if he objects to Knowles' use of the Grubers as child care providers. He also claims that there was no substantial evidence to support the trial court's requirement to transport Brianna by air, rather than car as had been the parties' practice and which would be available under the modified parenting plan only with Knowles' consent.

## DISCUSSION

A. Long Distance Air Travel Requirement

■ Modification of a parenting plan is subject to the discretion of the court. *In re Marriage of Wicklund*, 84 Wn. App. 763, 932 P.2d 652 (1996). It must not be based on untenable reasons or grounds or be manifestly unreasonable. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

■ Yeamans' challenge to the court's air transportation requirement primarily rests upon his argument that the trial court did not consider or give sufficient weight to the child's and the parents' schedules, airline schedules, and the cost of air travel versus road transport. The record reflects, however, that the court did consider these factors. The court's written findings state the following reasons for requiring air travel:

> The court further finds that given the time and expense to drive round trip from Pullman and also considering the Father's opposition to the Grubers acting as intermediaries for meeting half way, but particularly the mere fact that the round trip for this child to Pullman is some 630 miles for each residential period with the Mother as well as the testimony that the round trip airfare, as of a year and a half ago was $109, that the court will require the arrangements to be made for air travel for the Mother's residential time with Brianna. . . . If Mother consents, Father may use ground transportation of Brianna between Pullman and Mother's residence in lieu of SeaTac airport.
>
> The court finds that the Father or stepmother shall be required to place the child on a plane and be at the airport to meet her upon her return. The court finds that the Mother shall be required to meet Brianna at SeaTac and again place the child on a return flight following her residential time. If the Mother is unavailable, her fiancée or husband, presuming that it is not Randy Knowles, is authorized to take on that obligation and if both are unavailable, the Grubers may assume that responsibility.

The court also stated:

> Father should be able to put the child on a plane after school for the extended weekends that are called for in the plan as well as during times of vacation such that the child should arrive by 8:00 p.m. at SeaTac airport. The child's return to the Father should also occur by 8:00 p.m. in Pullman. Both the SeaTac and Pullman times should be subject to the flexibility that will be dictated by the airline schedules . . . . The court finds it appro-

priate to have the pick-up and drop-off times flexible to ensure that the child can be put to bed at a reasonable time.

The trial court's order clearly reflects the court's consideration of the financial cost of Brianna's monthly visits. It incorporates provisions allowing flexibility regarding arrival times and drivers. Either parent or their significant others can provide transportation, and backup options, such as the Grubers or neutral third parties, are permitted. The order also provides a car transportation option with the mother's consent. We therefore find no merit to Yeamans' assertions that the trial court failed to consider the child's and the parents' schedules, the cost of air travel versus the cost of car travel, and airline schedules. We also decide that there was no abuse of discretion in ordering air transportation. In his brief, Yeamans acknowledges that it would be "difficult" for Knowles to drive from Snohomish to Vantage for an 8 P.M. exchange on Fridays and Sundays due to her work schedule, which requires her to rise at 3 A.M. on those days. Given the 630 mile round trip between Snohomish and Pullman and the parties' incomes, air transportation was not outside the range of acceptable choices. We affirm the trial court's air transportation requirement.

B. Allocation of Extraordinary Expenses

Yeamans next contends that the trial court erred when it ordered him to pay 100 percent of the long distance travel expenses, when the ratio of the parents' net incomes is 70/30. He also challenges the portion of the trial court's order requiring him to pay 100 percent of the cost of child care during Knowles' residential time if he exercises his option to object to the Grubers as child-care providers.

■■ Long distance travel expenses and day-care expenses are considered extraordinary expenses not accounted for in the basic child support obligation. RCW 26.19.080(3). RCW 26.19.080(4) grants trial courts the discretion to determine the "reasonableness" and "necessity" of extraordinary expenses. RCW 26.19.080(3) governs their apportionment, stating, "These [extraordinary] expenses shall be shared by the parents in the same propor-

tion as the basic child support obligation." This court has held that this statutory language is mandatory. *See Murphy v. Miller*, 85 Wn. App. 345, 349-50, 932 P.2d 722 (1997); *In re Paternity of Hewitt*, 98 Wn. App. 85, 988 P.2d 496 (1999); *In re Marriage of Scanlon*, 109 Wn. App. 167, 34 P.3d 877 (2001), *review denied*, 147 Wn.2d 1026 (2002). Once the trial court determines that extraordinary expenses are "reasonable and necessary," it is required to allocate them in proportion with the parents' income. *Murphy*, 85 Wn. App. at 349.

Division Two of the Washington State Court of Appeals carved out an exception to the rule of proportionate allocation in *In re Marriage of Casey*, 88 Wn. App. 662, 967 P.2d 982 (1997). In *Casey*, Division Two held that where the facts support a deviation from the standard support obligation, the court may deviate from a proportionate allocation for extraordinary expenses.[1] *Casey*, 88 Wn. App. at 667. Due to the disparity of the parents' incomes in *Casey*, the trial court entered a child support order that granted the mother a deviation from her basic support obligation, reduced her $25 monthly transfer payment to $0, and imposed 100 percent of the travel expenses on the father to transport the children from his new home in Texas to Washington state, where the parents had lived before their divorce. On appeal, Division Two affirmed the child support order, including its allocation of 100 percent of the travel costs to the father, because the trial court deviated from the basic support obligation. *Casey*, 88 Wn. App. at 667-68.

In *Hewitt*, this court subsequently agreed with *Casey*'s conclusion that a deviation from extraordinary expenses is permissible when the court deviates from the basic support obligation. *Hewitt*, 98 Wn. App. at 89-90. In *Hewitt*, however, we reversed a 100 percent apportionment of travel expenses because the trial court did not deviate from the

---

[1] The court has the discretion to deviate from the standard amount when grounds exist for the deviation and it enters written findings and conclusions. RCW 26.19.075. After any deviations are made, the court determines each parent's support obligation. *In re Marriage of Crosetto*, 82 Wn. App. 545, 560, 918 P.2d 954 (1996).

standard calculation. *Hewitt*, 98 Wn. App. at 90. Likewise, in *Scanlon*, we reversed a 50/50 apportionment that was not in proportion with the parties' incomes. *Scanlon*, 109 Wn. App. at 181.

A trial court has broad discretion in setting child support. *In re Marriage of Peterson*, 80 Wn. App. 148, 152, 906 P.2d 1009 (1995). But the legislature, in enacting RCW 26-.19.080(3), has eliminated that discretion when the court allocates extraordinary expenses. *Murphy*, 85 Wn. App. at 349-50. In the only case to approve a deviation from the extraordinary expense allocation, the trial court also ordered a deviation from the basic support obligation. *Casey*, 88 Wn. App. at 668.

Here, the trial court did not deviate from the basic support obligation. Instead, it stated in its findings that it was ordering the 100 percent allocation partly because Yeamans' decision to move made the expenses necessary and partly because it was denying Knowles' request to reduce her basic support obligation from $192 to $25 per month. It expressly stated that its decision to deny Knowles' deviation request was to defray the travel costs to be imposed on Yeamans. The *Casey* exception permits a court to deviate from extraordinary expenses only if it first deviates from the basic support obligation. It follows that if a court does not deviate from the basic support obligation, then it cannot deviate from the extraordinary expenses. We therefore reverse the trial court's order requiring Yeamans to pay 100 percent of the long distance travel expenses. For the same reason, it was improper for the trial court to order Yeamans to pay 100 percent of the child care expenses in the event he objects to the Grubers as caregivers. We remand for reallocation of these extraordinary expenses.

Because the trial court's denial of Knowles' request for a deviation was based upon its disproportionate travel expense allocation, the trial court may revisit that issue on remand and determine whether to grant or deny a deviation based upon the evidence before it. Upon consideration of any deviation request and reallocation of the extraordi-

602

nary expenses, the court may determine whether any credit is owed for overpayment of travel expenses.

C. Request for Attorney Fees

Knowles requests attorney fees on appeal under RCW 26.26.140. We deny her request.

RCW 26.26.140 applies only to actions brought under the Uniform Parentage Act, chapter 26.26 RCW. This action is a modification of a parenting plan governed by chapter 26.09 RCW, which has its own fee authorizing statute granting this court discretion to award fees on appeal after considering the parties' financial resources. Even under that statute, we decline to award attorney fees. The record reflects that both parents have limited means and Knowles' litigation has been funded by the Grubers.

We reverse and remand for further proceedings in accordance with this opinion.

KENNEDY and AGID, JJ., concur.