

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF STACY J. RUDDICK, | ) ) ) | No. 35416-4-III |
| Appellant, | ) ) | |
| and | ) ) | UNPUBLISHED OPINION |
| RANDALL H. RUDDICK, III, | ) ) | |
| Respondent. | ) | |

FEARING, J. — Washington law demands that parents pro-ratably share in day care expenses and transportation costs of the noncustodial parent's visits with the couple's children. Stacy Ruddick challenges the superior court's order requiring her to split costs incurred by her former husband when visiting their three disabled children in San Diego. We agree with Stacy's contention that the superior court wrongly categorized Randall Ruddick's visitation expenses other than airfare as transportation costs. We remand for additional proceedings to determine if other visitation costs might constitute other forms of sharable expenses and if Randall may gain relief on other grounds for those expenses.

FACTS

Stacy and Randall Ruddick wed and bore three children. The marital couple dissolved the marriage in 2011. The parenting plan, on dissolution, granted residential placement to Stacy. Both parents then lived in Spokane. An April 2011 child support order directed Randall to pay $1,068 per month for support.

All three children suffer from Angelman Syndrome, a genetic disorder that affects the nervous system and causes cognitive and muscular limitations. The disability requires considerable care and attention. The children must periodically travel to Houston and Boston for treatment.

In February 2013, Stacy Ruddick filed a petition to modify the parenting plan and permit her to relocate with her children to San Diego. In 2013, the children were respectively ages eight, six, and four. The trial court granted the modification. The trial court determined:

> Although Spokane is a wonderful place it cannot compare with the facilities, personnel, care providers, and professionals available in the San Diego area [to assist in treatment for Angelman Syndrome]. The weather alone would be more conducive to their [the three children's] needs as they are very curious and like to play and explore. The cold weather in Spokane makes such activities shorter and less often for safety concerns. Additionally, the children are coming of an age that it is important that they have available to them more inclusive education, which is available in San Diego as well. Finally, their doctors and geneticists, along with national studies in San Diego that will help these children, and reduce their air travel to such places as Boston or Houston [sic].
> . . . .

> . . . There will no doubt be travel costs for the father[.] . . . These travel costs, although expensive at times, are not prohibitive.

Clerk's Papers (CP) at 2-3.

When granting Stacy Ruddick's petition to relocate, the trial court entered a parenting plan that accounted for the geographical distance between Stacy and Randall Ruddick. The plan allowed Randall to visit the three children in San Diego during the last two weeks of each August. Randall could also visit at other times that he traveled to southern California. The order reserved for later determination a modification of child support because of the relocation and also directed that any modification of Randall's child support obligation reflect visitation transportation costs.

Stacy Ruddick does not work outside the home in order to care for the children's disabilities. She receives government support as a result of the children's needs and her willingness to care for the needs at home. She does not pay federal income tax on this income.

Randall Ruddick visited his children in San Diego for two weeks in August 2013. Receipts for outlays showed that Randall incurred $5,471.90 in expenses during those two weeks.

## PROCEDURE

This appeal stems from Randall Ruddick's April 2014 petition to modify child support. A child support work sheet prepared by Randall noted that, based on the

respective parties' income, the child support schedule obliged Randall to pay $984.40 per month in support for the three children. The work sheet also noted Randall's annual travel expenses to visit the children to be $9,600.00, or $800.00 per month. To visit the children, Randall must pay for roundtrip airfare from Spokane to San Diego. In addition to food expenses, Randall must also pay for a condominium to temporarily house the three children, since a standard hotel room would not accommodate the needs of the children arising from Angelman Syndrome. Randall claimed $6,000.00 in visiting expenses in 2013.

In response to Randall Ruddick's petition to modify child support, Stacy Ruddick argued that Randall grossly inflated the cost of visitation expenses. She also suggested that Randall could visit the children in Spokane and only pay $250 per child on round trip airfare. She posited that Randall chose to visit the children in San Diego.

Randall Ruddick did not exercise visitation rights in August 2014. A September 2014 order found Randall able to visit the children and held Randall in contempt for disobeying the visitation order. As a result of Randall's failure to visit the children, Stacy missed a vacation. The same order demanded that Randall exert reasonable efforts to visit the children in August 2015.

In February 2016, Randall Ruddick filed a supplemental declaration in support of the petition to modify his child support obligation. He stated that, in 2015, he visited the children for one month instead of the originally ordered two weeks, because of his failure

to visit in 2014. He declared expenses for the visit of $560.00 in airfare, $3,759.84 in housing, $1,041.58 in car rental, $900.00 in food, $400.00 in entertainment, and $500.00 in necessities such as diapers, for a total sum of $7,161.42. He anticipated $6,000.00 in visitation expenses annually for the future. He recognized that the expenses would decrease in 2016, because he would only visit for two weeks, but claimed the housing costs would not decrease much because of a "good deal" he received for housing in 2015. CP at 226.

In February 2016, the superior court commissioner entertained argument over the amount to credit Randall Ruddick for visitation transportation expenses when modifying his child support obligation. Randall asked for a credit of $500 per month, or $6,000 per year. Stacy asked that Randall be given a credit of $140 per month, or $1,680 per year.

In April 2016, the superior court commissioner submitted a written ruling on the child support modification hearing. The ruling noted Stacy Ruddick's net income as $5,141.00 a month and Randall's as $3,804.00. The commissioner observed that hotel accommodations would be inadequate for Randall's August visits:

> Transportation Costs:
> In the Order on Objection to Relocation dated February 15th, 2013, the Court specifically directed this Court in the support modification hearing to "make sure that transportation costs for the relocation parenting plan are considered in that matter." Based on pleadings and arguments of counsel, these costs refer to the 2[-]week periods in which Mr. Ruddick is entitled to see his children pursuant to the parenting plan, beginning in 2013. I will address the previous costs of this transportation below. However, the ongoing costs of this transportation, whether Mr. Ruddick

5

elects to have that time in California or bring the children to Spokane, will be addressed in the support calculation.

It is also undisputed that the parties' children are special needs, and require greater than average care when in the care of either party—staying in a regular hotel for a two[-]week period, going out to eat for every meal does not appear to be an option for these kids. I believe both parties would agree that if Mr. Ruddick were to continue visiting in California, he needs to obtain a more condominium-like setting, with kitchen facilities and room for him and the three children given their special needs. If he ever choses to bring them back to Spokane, he will have to carefully assess the transportation needs for getting them to/from his home. These needs were clearly contemplated in the relocation trial.

CP at 263-64. The commissioner's letter ruling provided:

Mr. Ruddick has visited the children two times since entry of the 2013 parenting plan—one 2 week visit in 2013 and after entry of the 2014 contempt order, one[-]month long visit in 2015, as contemplated in the contempt order. Mr. Ruddick has submitted an accounting of his expenses from the 2013 and 2015 visits, with some receipts of the major expenses. These indicate that in 2013, the total cost of his visit was $5,471.90 for a 2[-] week period. In 2015, the total cost of his visit for a 1[-] month period was $7,165.86 ($3,582.93 averaged for a per 2[-] week period). Taken together, the average yearly cost for these visits has been $4,213 for this two[-] week visitation period. Based on the fluctuation of travel costs that may happen time to time, I am allotting a yearly transportation cost for Mr. Ruddick of $4,500, which amounts to a monthly credit to him in the worksheet of $375.

Child Support Calculation:

The combined net income of the parties is $8,945, and with three children under the age of 12 makes the total amount of child support $2,337 ($779 each). Ms. Ruddick's proportionate share is 0.575 and Mr. Ruddick's is 0.425. Mr. Ruddick receives a monthly credit of $375 for his travel expense, as indicated above. With each parties' proportionate share applied to these numbers, Ms. Ruddick's standard calculation is $1,560, and Mr. Ruddick's standard calculation is $777. I have filed a signed child support worksheet that reflects these numbers.

Effective Start Date and Credit for Previously Paid Travel Expenses:

> The effective start date of the new support order shall be August 1st, 2013. As the petition for support modification was filed in 2012, and the parties modified their parenting plan in February 2013, this support Order reflects changes that are consistent with the new parenting plan. I understand the great deal of time that has passed due to the highly litigious nature of this case, and appreciate the profound financial effect that this will have on both of the parties and the children.

CP at 264-65. Thus, the court commissioner allotted Randall Ruddick yearly transportation costs of $4,500, $1,500 less per year than requested by Randall and $2,820.00 more than proposed by Stacy. The commissioner thereafter modified Randall's child support obligation to $777 a month. The court commissioner also ruled the modification to be retroactive to the date of the relocation of the children to San Diego, such that Randall received a credit against some of his future support payments.

As stated in the letter ruling, the court commissioner completed a standard Washington State Child Support Schedule Work sheet. A portion of the work sheet reads:

|  | Stacy | Randall |
|---|---|---|
| 11. Day Care and Special Expenses | $ | $ |
| a. Day Care Expenses | $ | $ |
| b. Education Expenses | $ | $ |
| c. Long Distance Transportation Expenses | $ | $ 375 |
| d. Other Special Expenses (describe) | $ | $ |
| e. Total Day Care and Special Expenses | $ | $ 375 |

CP at 259.

Stacy Ruddick filed a motion for reconsideration, and a declaration in support of

7

the motion. Stacy complained that the court commissioner allowed Randall "vacation" costs when visiting the children. CP at 283. Stacy also contended that Randall inflated the proposed visitation expenses. Stacy asserted, in her declaration, new information regarding her income, which suggested the existence of special expenses not covered by regular transportation payments. The declaration also sought relief not previously sought. Randall responded with his own declaration that challenged the timeliness of the motion, Stacy's attempt to request relief not sought before the trial court and the inclusion of new evidence in her declaration.

In September 2016, the court commissioner entered an order partially granting and partially denying Stacy Ruddick's motion for reconsideration. The commissioner rejected again Stacy's challenge to the transportation costs, noting "this two[-]week period [Randall] has with the children once a year should be a vacation with them, and one they look forward to." CP at 307. The commissioner also affirmed the denial of special expenses for the children, but did modify the ruling to reflect a change in Stacy's income.

LAW AND ANALYSIS

This appeal focuses on the superior court commissioner's ruling modifying child support because of Randall Ruddick's travel expenses to visit his three children in San Diego. In her brief, Stacy Ruddick assigns error to the purported rulings of the court commissioner:

8

1. By not considering the facts provided by both parties, especially the father's facts, who admitted he did not take visits every year, when she calculated the amount of visitation credits to give him;

2. By not following the statutes regarding visitation transportation costs at RCW 26.19.080(3);

3. By calculating an erroneous figure for the visitation credit based on an admitted doubled visitation amount by the father for these costs;

4. By failing to include the negative affect of those years that Mr. Ruddick failed to visit in the calculation of the visitation credit and/or a method to calculate that into the ruling as well;

5. By showing bias in her opinion by emphasizing that although Mr. Ruddick had a fair relocation trial, that it was somehow relevant to the determination of child support and visitation costs, that he fought against this relocation;

6. By treating the mother's request for rearing costs such as diapers, etc, for these disabled children, differently than the father's request for reimbursement of those expenses;

7. By allowing the father unreasonable day to day credits for his visitation such as all his food, gas, transportation, diapers, and housing in that calculation, auto rental, and even entertainment, even though if he visited the children at home in Washington he would have had those same costs unreimbursed.

Opening Br. at 7-8 (emphasis omitted). Stacy Ruddick phrases these assignments of error in value-laden language that already assumes an error occurred. The assignments overlap. We proceed to review the record to determine if the court commissioner breached the strictures of RCW 26.19.080(3). In doing so, we separate the argument that some of the expenses afforded Randall Ruddick include more than transportation costs from other arguments forwarded by Stacy.

9

Long Distance Transportation Costs

We review a trial court's rulings dealing with the provisions of a parenting plan

for abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629

(1993); *In re Marriage of Zigler and Sidwell*, 154 Wn. App. 803, 808, 226 P.3d 202

(2010). Courts must base child support in parentage actions on the schedules and

standards found in RCW 26.19. RCW 26.26.130(6). A trial court abuses its discretion if

it bases a decision outside the applicable legal standard or on untenable grounds. *In re*

*Marriage of McNaught*, 189 Wn. App. 545, 552, 359 P.3d 811 (2015).

RCW 26.19.080 controls this appeal. Subsections 3 and 4 of the statute declares:

> (3) *Day care and special child rearing expenses, such as* tuition and
> *long-distance transportation costs to and from the parents for visitation*
> *purposes,* are not included in the economic table. These expenses shall be
> shared by the parents in the same proportion as the basic child support
> obligation. . . .
> (4) The court may exercise its discretion to determine the necessity
> for and the reasonableness of all amounts ordered in excess of the basic
> child support obligation.

(Emphasis added.)

Courts base child support in marital dissolution actions on the schedules and

standards found in chapter 26.19 RCW. Day care and special child rearing expenses,

such as tuition and long-distance transportation costs to and from the parents for

visitation purposes, are not included in the economic table. These expenses shall be

shared by the parents in the same proportion as the basic support obligation. Under RCW

10

26.19.080(4), the court "may exercise its discretion to determine the necessity for and the reasonableness of all amounts ordered in excess of the basic child support obligation."

RCW 26.19.080(3) speaks in terms of splitting, between the parents, the cost of the child traveling for visitation. Nevertheless, this court extended the statute to the cost of the parent traveling to the child's location for visitation. *In re Paternity of Hewitt*, 98 Wn. App. 85, 88-89, 988 P.2d 496 (1999). Many children are too young to travel alone. In this appeal, we assume the children's disability complicates travel.

Because RCW 26.19.080(3) mandates the cost sharing, the trial court must enforce the provision. *Murphy v. Miller*, 85 Wn. App. 345, 349-50, 932 P.2d 722 (1997). The trial court holds discretion only to determine the need for long-distance transportation costs and the reasonableness of the costs. *Murphy v. Miller*, 85 Wn. App. at 349. Once the court determines that the costs are necessary and reasonable, the parties must share them in the same proportion as the basic support obligation. *In re Marriage of Scanlon and Witrak*, 109 Wn. App. 167, 181, 34 P.3d 877 (2001); *In re Paternity of Hewitt*, 98 Wn. App. at 89 (1999); *Murphy v. Miller*, 85 Wn. App. at 349 (1997).

Before assessing the need and reasonableness of transportation costs, the court must first determine if a claimed expense qualifies as a "transportation" cost. RCW 26.19.080(3) references "long-distance transportation costs to and from the parents for visitation purposes." Stacy Ruddick contends that a car rental bill, food, condominium rent, diapers, and entertainment do not qualify. We agree.

11

No. 35416-4-III
*In re Marriage of Ruddick*

This court in *Marriage of McNaught* addressed the identical question. The trial court allowed the mother to relocate with the child from Seattle to Texas, with the father visiting the child in Texas. The trial court ordered a proportionate split of airfare alone, thereby denying the father's request that the mother also share in the additional expenses of housing, food, and car rental. This court affirmed the denial of costs beyond the airfare. This court determined the statute unambiguous particularly since the statute adds the words "to and from" the location after "transportation costs." 189 Wn. App. at 567.

We quote some business dictionaries and lay dictionaries for the definitions of "transportation expenses" and "transport."

> Transportation expenses are costs incurred by an employee or self-employed taxpayer while away from home in a travel status for business. Transportation expenses are a subset of travel expenses, which are all costs associated with business travel, such as taxi fare, fuel, parking fees, lodging, meals, tips, and cleaning, shipping and telephone charges that employees may incur and claim for reimbursement. Transportation expenses are narrower in that they refer only to the use of or cost of maintaining a car used for business, or transport by rail, air, bus, taxi or any other means of conveyance for business purposes. . . .

INVESTOPEDIA, https://www.investopedia.com/terms/t/transportationexpenses.asp.

Another dictionary defines "transportation expenses" as:

> 1. Business: A claim for reimbursement made by an employee related to the costs of getting to and from a business-related activity.

BUSINESS DICTIONARY, http://www.businessdictionary.com/definition/transportation-expenses.html.

12

The Merriam-Webster Dictionary partially defines "transportation" as:

> 1 **:** an act, process, or instance of transporting or being transported
> 2a **:** means of conveyance or travel from one place to another
> b **:** public conveyance of passengers or goods especially as a commercial enterprise.

MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/transportation.  The same dictionary defines "transport" as:

> transitive verb
> 1 **:** to transfer or convey from one place to another transporting ions across a living membrane

https://www.merriam-webster.com/dictionary/transport.  All of these definitions coincide with the holding in *McNaught*.  One definition explains that the concept of "transportation expenses" is narrower than the notion of "travel expenses."

We note that, in analyzing RCW 26.19.080(3), some decisions read the statute as directing the sharing between parents of "travel expenses."  *In re the Marriage of McNaught*, 189 Wn. App. at 567, (2015); *In re Yeamans*, 117 Wn. App. 593, 599, 72 P.3d 775 (2003); *In re Paternity of Hewitt*, 98 Wn. App. at 85 (1999).  These opinions impliedly equate "travel expenses" with "transportation expenses."  We consider "transportation expenses" to be a subset of "travel expenses" and not entirely synonymous.  If RCW 26.19.080(3) demanded a sharing of "travel" expenses, we might include car rental, lodging, and food during the travel.

Randall Ruddick astutely notes that RCW 26.19.080(4) does not limit the sharing

of expenses to transportation costs, but also includes all day care and child-care rearing

expenses.  He then argues that the court commissioner awarded the additional costs of

food, lodging, and entertainment as day and child-care rearing expenses.  We read the

record to the contrary.  In both the child support worksheet and the letter ruling, the court

commissioner assigned the additional expenses beyond airfare as transportation costs.

We observe that, because of the unique needs of the Ruddick children, the food,

lodging, car rental, diapers, and entertainment might fulfill the definitions of the other

terms such as day care and special child rearing expenses.  Since the trial court included

car rental, lodging, food, and entertainment under the rubric of transportation costs, the

trial court did not address whether it could order the sharing of costs for these other

expenses on some other ground.  Therefore, we remand to the trial court for further

proceedings to determine if another ground or other grounds exist to order Stacy Ruddick

to share in those additional expenses.

## Other Contentions

Stacy Ruddick also objects to the trial court's grant of the amount of expenses on

the alleged assumption that the trial court failed to note that Randall's 2015 expenses

were based on a visit double in length than ordered visitation because of the failure to

exercise visitation in 2014.  We disagree.  The trial court denied Randall an amount equal

to the 2015 expenses, while noting that the 2015 trip lasted four weeks. The trial court reasonably established an amount of expenses based on a two-week visit to San Diego.

Stacy Ruddick also contends the costs claimed by Randall were extravagant. We affirm only the ruling demanding that Stacy share in the costs of airfare. Stacy does not expressly characterize the airfare as extravagant, so we affirm the sharing of the fare. On remand, Stacy may claim anew the excessive nature of any nontransport expenses sought by Randall.

Stacy Ruddick accuses the court commissioner of bias because the commissioner referenced that Randall objected to relocation of the children to San Diego and such an objection bears no relevance to the amount of expenses that Stacy must divide. We agree the court commissioner mentioned Randall's objection, but do not conclude that the commissioner based its decision on the observation. Stacy cites no authority to support the argument of bias. We do not consider conclusory arguments that are unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012).

Stacy Ruddick next contends the trial court erred in denying her request for some reimbursement of rearing costs, such as diapers, when affording Randall partial reimbursement for the same costs. We have reversed such costs. Stacy may raise this argument again during the remand hearing.

No. 35416-4-III
*In re Marriage of Ruddick*

## CONCLUSION

We affirm the court commissioner's order requiring Stacy Ruddick to share in Randall Ruddick's cost of airfare to visit the children in San Diego. We vacate the court commissioner's order requiring Stacy Ruddick to share in other expenses. We remand for further determination, consistent with this opinion, as to what, if any, other expenses incurred by Randall in visiting the children should be shared by Stacy.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.

16