IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Matter of the Parenting and Support of A.B. | No. 80395-6-I |
| | DIVISION ONE |
| EMERY DEVIN HAMMOND, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| STEPHANIE NICOLE BANNICK, | |
| Appellant. | |

CHUN, J. — This case concerns a final parenting plan for A.B., the daughter of Stephanie Bannick (the mother) and Emery Hammond (the father). In crafting the plan, the trial court considered the recommendations of a guardian ad litem (GAL), whose fees it required Bannick to pay. After a trial, the court made findings under RCW 26.09.191(3). Based on those findings, it eliminated Bannick's residential time with A.B. until the mother completed 10 sessions of reunification therapy. The trial court awarded attorney fees to Hammond and retained jurisdiction over the matter. Bannick appeals the parenting plan, the retention of jurisdiction, and the GAL and attorney fee awards. We affirm in part, reverse in part, and remand for proceedings consistent with the opinion.

BACKGROUND

In a 2015 parentage proceeding, the trial court determined that Hammond is A.B.'s father and issued an order of parentage designating Bannick as A.B.'s

Citations and pin cites are based on the Westlaw online version of the cited material.

custodian. The court reserved the question of Hammond's residential time with A.B. for a later trial. After the parentage trial—at which Bannick did not appear—the court entered an order designating Hammond as A.B.'s custodian.

In 2016, the trial court held a trial to establish a parenting plan for A.B., after which the court issued a parenting plan with findings of fact and conclusions of law.

In 2017, Hammond petitioned to modify the parenting plan. The trial court issued a temporary parenting plan that prohibited Bannick from visiting A.B. until she completed a psychiatric assessment and treatment.

In 2018, the trial court reinstated Bannick's right to visitation. It also appointed a GAL to investigate Bannick's mental health and assist in the development of a final parenting plan. It ordered Bannick to pay the GAL's fees. In 2019, the GAL issued a report recommending that A.B. continue to reside with Hammond, and to phase in contact with Bannick contingent on her compliance with therapy and medication management. Bannick moved for the court to adopt the GAL's recommendations, which motion the trial court denied, in part because the GAL had not been provided with a copy of the court's 2016 findings and conclusions.

In June 2019, the court held a trial on the father's petition to modify. The court issued its oral ruling and then, on July 2, a final parenting plan modifying the prior plan. It ordered 10 sessions of reunification therapy between Bannick and A.B., after which either party could move for additional residential time. It also found, among other findings under RCW 26.09.191(3), that Bannick had a

2

long-term substance abuse issue that gets in the way of her ability to parent, and that she had withheld A.B. from Hammond without good reason. The trial court retained jurisdiction in the matter and included a provision allowing the parties to move to amend the plan after a year. It also invited the parties to a post-ruling conference call to discuss any questions about the parenting plan.

The court heard questions from the parties over telephone on July 10, 2019. The court clarified its plan and indicated that it allowed the parties to move to amend the residential provision of the parenting plan and avoid the modification procedure in RCW 26.09.260. After the call, on July 22, 2019, the trial court issued an amended final parenting plan.[1] It also awarded Hammond attorney fees. Bannick appeals.

We discuss additional facts below as necessary.

## ANALYSIS

We review modifications to a parenting plan for an abuse of discretion. In re Marriage of Hansen, 81 Wn. App. 494, 498, 914 P.2d 799 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). "A trial court's decision is based on untenable grounds when the decision is contrary to law." State v. Kassner, 5 Wn. App. 2d 536, 539, 427 P.3d 659 (2018).

---

[1] Below, we refer to the July 22, 2019 amended final parenting plan as "the parenting plan."

We review a trial court's factual findings for substantial evidence. Katare, 175 Wn.2d at 35. Evidence is substantial if it would suffice "to persuade a fair-minded person of the truth of the matter asserted." Id. We will not reweigh the evidence and will defer to the trial court's credibility determinations. In re Marriage of Fahey, 164 Wn. App. 42, 62, 262 P.3d 128 (2011).

A. Amendment Procedure

Bannick argues the trial court erred by allowing the parties to move to amend the residential time provision of the parenting plan and avoid the modification process of RCW 26.09.260. We agree.

The parenting plan states that after 10 reunification therapy sessions and at the therapist's recommendation, either party may move for increased residential time commensurate with the therapist's recommendation. But the parties may modify such a plan only by agreement, petition to modify, or temporary order. See In re Marriage of Christel and Blanchard, 101 Wn. App. 13, 22, 1 P.3d 600 (2000) ("A permanent parenting plan may be changed in three ways: by agreement, by petition to modify, and by temporary order."). The trial court allowed modification by motion so the parties could avoid the modification process of RCW 26.09.260. Because this procedure is contrary to law, we conclude the trial court erred by including it and remand the parenting plan.[2] See

---

[2] Bannick also argues that by declining to allow her to move for residential time until completion of 10 reunification therapy sessions, the trial court abused its discretion by making an open-ended reservation as prohibited by In re Parentage of C.M.F., 179 Wn.2d 411, 314 P.3d 1109 (2013). Since we remand the parenting plan on the ground that the trial court improperly allowed the parties avoid the modification procedure, we do not reach this argument.

4

Christel, 101 Wn. App. at 23–24 (concluding the trial court abused its discretion by making a permanent change to a parenting plan where no petition to modify was present).

B. Bannick's Residential Time

The 2016 parenting plan provided some residential time for Bannick, but the 2019 parenting plan eliminated her residential time pending her completion of reunification therapy. In making this decision, the trial court made findings under RCW 26.09.191(3)(a), (b), (c), (e), and (f).[3] Bannick argues substantial evidence does not support the findings under subsections (c) and (f)—that she has a long-term substance abuse issue that gets in the way of her ability to parent and that she improperly withheld A.B. from Hammond. She also argues that the trial court abused its discretion by eliminating her residential time based on these findings

---

[3] RCW 26.09.191(3) provides:

A parent's involvement or conduct may have an adverse effect on the child's best interests, and the court may preclude or limit any provisions of the parenting plan, if any of the following factors exist:

(a) A parent's neglect or substantial nonperformance of parenting functions;

(b) A long-term emotional or physical impairment which interferes with the parent's performance of parenting functions as defined in RCW 26.09.004;

(c) A long-term impairment resulting from drug, alcohol, or other substance abuse that interferes with the performance of parenting functions;

(d) The absence or substantial impairment of emotional ties between the parent and the child;

(e) The abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development;

(f) A parent has withheld from the other parent access to the child for a protracted period without good cause; or

(g) Such other factors or conduct as the court expressly finds adverse to the best interests of the child.

because this restriction is not reasonably calculated to protect A.B. from physical, mental, or emotional harm. We conclude that substantial evidence supports the withholding finding, but not the substance abuse finding. And we conclude the trial court did not abuse its discretion by eliminating Bannick's residential time.

1. Does substantial evidence support the contested findings?

a. Substance abuse

Bannick argues that substantial evidence does not support the trial court's finding that she suffers from a long-term substance abuse issue that gets in the way of her ability to parent. We agree.

In January 2018, Bannick reported to her doctor that she uses cannabis five times per week for anxiety and depression, that she had used it since she was 17 years old, and that she takes prescription Wellbutrin, Adderall, and Effexor. In December 2018, she stated that she uses marijuana once a month. In April 2019, Bannick tested positive for marijuana. At trial, Bannick testified that she seldom uses marijuana, but that she is prescribed Wellbutrin, Adderall, and Effexor. At trial, the GAL suggested that the parenting plan include provisions requiring Bannick not to use marijuana along with her prescribed medications. The trial court expressed concern about Bannick using marijuana along with anti-anxiety and anti-depressant medication, and found that she had a long-term substance abuse issue that interfered with her ability to parent.

Given her statement to her doctor in 2018, and her positive test in 2019, the trial court reasonably found that Bannick had used marijuana for a long-term period. But while the GAL and trial court expressed concern about mixing

6

marijuana with prescription drugs, the record lacks any evidence that Bannick had an impairment that interfered with her ability to parent A.B. Thus, we conclude that substantial evidence does not support this finding.

b. Withholding A.B.

Bannick argues that substantial evidence does not support the trial court's finding that she withheld A.B. from Hammond "for a long time without a good reason."[4] Though this is a closer question, we disagree.

The trial court based its withholding finding on an episode in July 2017 where Bannick took A.B. on vacation. The 2016 parenting plan allowed Bannick to take A.B. on two weeks of vacation in summer 2017 but indicated that she must provide her vacation schedule in writing by May 2017. On June 1, 2017, Bannick told Hammond she wanted to take A.B. on vacation from July 10 through 17, and from August 3 through 10. But Bannick ultimately took A.B. on a vacation to the Oregon coast from about July 21 through 31, with only a few days' notice to Hammond, and over his objection. The trial court found that this constituted withholding of A.B. because the vacation differed from the planned vacation dates for the summer established in June.

Bannick argues that her failure to comply with the notice requirements of the 2016 parenting plan should not lead to a withholding finding, since Hammond

---

[4] In her assignments of error, Bannick argues the trial court improperly found in its oral ruling that she took A.B. to Oregon "without telling anyone." But Bannick makes no argument about this finding in her brief, so she has waived the assignment of error. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding a party waived its assignment of error after making no argument supporting it in briefing). And the trial court did find that Hammond knew in advance about the trip.

also did not comply with the notice requirements. But the question is whether substantial evidence supports the withholding finding at issue, not whether the trial court could have also made a withholding finding against Hammond. Bannick's notification did not suggest that she would take A.B. on vacation on July 21 through 31. Bannick also argues that because the parenting plan allowed for vacation time, vacation was a good reason to keep A.B. in her care. But the parenting plan required notice for vacation in May, and Bannick did not comply with that requirement. Thus, the evidence could convince a fair-minded person that Bannick improperly withheld A.B. from Hammond for a long time without a good reason. We conclude that substantial evidence supports this finding.

2. Relationship between RCW 26.09.191(3) findings and residential restriction

    a. Did the trial court abuse its discretion by restricting Bannick's residential time based on its RCW 26.09.191(3) findings?

Under the circumstances defined by RCW 26.09.191(3), a trial court may preclude or limit provisions of a parenting plan if a parent's involvement or conduct has an adverse effect on the child's best interests. The trial court's ability to preclude or limit provisions of a parenting plan includes the ability to completely preclude a parent's residential time. In re Marriage of Underwood, 181 Wn. App. 608, 611, 326 P.3d 793 (2014).

The trial court found that Bannick had neglected her parental duties; that she had a long-term emotional or physical problem that gets in the way of her ability to parent; that she suffered from a long-term substance abuse issue that

gets in the way of her ability to parent; that she used conflict in a way that endangers A.B.'s psychological development; and that she had withheld A.B. from Hammond without good reason. These findings are linked to RCW 26.09.191(3)(a), (b), (c), (e), and (f), respectively. As discussed above, substantial evidence does not support the trial court's substance abuse finding under subsection (c). But since the trial court also made findings under subsections (a), (b), (e), and (f), the trial court could preclude or limit provisions of the parenting plan, such as Bannick's residential time. And even if we decided differently as to the withholding conclusion, Bannick does not challenge the trial court's findings under subsections (a), (b), and (e), and unchallenged findings of fact are verities on appeal. State v. Campbell, 166 Wn. App. 464, 469, 272 P.3d 859 (2011). Thus, the trial court did not abuse its discretion by restricting Bannick's residential time.[5]

b. Particularized findings

Based on In re Marriage of Chandola,[6] Bannick argues that any limitations imposed by the trial court must have a nexus with the harm associated with the RCW 26.09.191(3) findings, that they must stem from particularized evidence of harm to the child, and that the trial court may impose limitations only as necessary to protect the child from physical, mental, or emotional harm or else it

---

[5] Bannick assigns error to the parenting plan because it does not serve A.B.'s best interests. She supports this assignment in her brief by citing testimony from witnesses at trial that she loves her daughter and that the two are bonded, and the GAL's statement that A.B. needs to have visitation with Bannick. But she cites no law that would prevent the trial court from using its authority under RCW 26.09.191(3) to restrict her residential time.

[6] 180 Wn.2d 632, 648, 327 P.3d 644 (2014).

abuses its discretion.  See Chandola, 180 Wn.2d at 636.  But the Chandola

holding applies only to RCW 26.09.191(3)(g), the statute's catch-all provision,

and not to subsections (a)–(f).[7]  The trial court need not have made such

particularized findings or concluded that the restrictions were reasonably

necessary to protect A.B.'s physical, mental, or emotional well-being.[8]

### C. Delegation of Contact Decision

Bannick argues the parenting plan improperly delegated to Hammond the

decision of when she can have contact with A.B. by requiring agreement of the

parties for supervised two-hour visits between her and A.B.  Hammond argues

he has no such discretion.  We conclude the trial court did not abuse its

discretion by fashioning this provision.

Until Bannick completes reunification therapy, she has no scheduled

residential or visitation time with A.B.  If the parties agree to visitation, then

Bannick may participate in a two-hour supervised visit with A.B.  By extension, if

Hammond does not agree to the visit, it will not occur.  But Bannick cites no law

---

[7] See In re Marriage of Ingersoll, noted at 200 Wn. App. 1070, 2017 WL 4653441 at *3–4 (review denied, In re Marriage of Ingersoll, noted at 190 Wn.2d 1010, (2018)); but see GR 14.1 ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").  Chandola's holding applies only to subsection (g) because subsections (a)–(f) already "'concern either the lack of any meaningful parent-child relationship whatsoever or conduct . . . that seriously endangers the child's physical or emotional well-being.'"  Ingersoll, 2017 WL 4653441 at *3 (alteration in original) (quoting Chandola, 180 Wn.2d at 647).  We do note that "[i]n its conclusion regarding the necessity of harm, [Chandola] referred generally to RCW 26.09.191(3) rather than specifically to RCW 26.09.191(3)(g)."  Ingersoll, 2017 WL 4653441 at *3 n.2.  But "[t]his appears to be an inadvertent omission.  Considered in context—following directly after a reference to RCW 26.09.191(a)–(f)—the court's holding clearly referred only to subsection (3)(g)."  Id.

[8] Bannick also argues that the trial court cannot eliminate her residential time under RCW 26.09.191(2).  But it did so under subsection (3), not subsection (2).

that precludes such a mechanism. She cites <u>In re the Parentage of Schroeder</u> and <u>In re the Parentage of Smith-Bartlett</u>, in which the courts held a GAL and arbitrator, respectively, could not unilaterally modify the visitation conditions in a parenting plan. 106 Wn. App. 343, 352–53, 22 P.3d 1280 (2001); 95 Wn. App. 633, 639–40, 976 P.2d 173 (1999). In both cases, the court reasoned that any modification of a parenting plan requires an independent inquiry by the trial court. <u>Schroeder</u>, 106 Wn. App. at 352; <u>Smith-Bartlett</u>, 95 Wn. App. at 640. But neither case applies, since an agreed-upon two-hour supervised visit is envisioned by the parenting plan and would not constitute a modification of it. We conclude that the trial court did not abuse its discretion by allowing two-hour supervised visits upon agreement of the parties.

D. Oral Findings and GAL Recommendation

Bannick argues that substantial evidence does not support certain portions of the trial court's oral findings, which led the trial court to improperly reject the GAL's recommendation to phase in residential time for Bannick and A.B. We conclude that even if substantial evidence does not support the challenged oral findings, the trial court did not abuse its discretion by declining to follow the GAL's recommendation.

A.B.'s kindergarten teacher and the visitation supervisor testified at trial. Bannick argues that the trial court misapprehended the teacher's testimony. She says the court incorrectly quoted the teacher as saying that A.B. would need "incredible attention and support" after her visits with her mother, and that A.B. did better in class while visits were not occurring. She also argues the trial court

11

misapprehended the testimony of the visitation supervisor. She says the court incorrectly quoted the supervisor as saying that she "couldn't get through to [Bannick] about being on time and about being appropriate constantly," and that Bannick saw her as a nuisance and could not accept the rules of visitation. Bannick also argues the trial court's oral ruling shows it considered double hearsay within admitted Child Protective Services documents, and that it mischaracterized the evidence within the documents. The trial court incorporated these oral findings into the parenting plan. From the foregoing, Bannick argues that the trial court's mischaracterizations influenced its decision to reject the GAL's recommendation for phased-in residential time.

The trial court mistakenly quoted the testifying witnesses in the findings above. But substantial evidence still supports the findings. The quote, "[A.B. needed] incredible attention and support," does not appear to be a direct quote from the teacher's testimony. But based on her testimony, it does appear that A.B. needed increased attention and support after visits with her mother: the teacher stated that A.B. had heightened anxiety and hyperactivity just before and after visits with Bannick, and that A.B. needed more counseling during those periods. The teacher also stated that A.B.'s behavior had improved in the month and a half before trial when she was not seeing her mother. The trial court incorrectly quoted the teacher, but substantial evidence supports the substance of its finding.

The trial court also incorrectly quoted the visitation supervisor by claiming the supervisor stated that she "couldn't get through to Mom about being on time

and being appropriate consistently," and that Bannick saw her as a "nuisance." While these exact words did not appear in the supervisor's testimony, substantial evidence supports their substance. The supervisor testified that Bannick regularly arrived late. She testified that Bannick saw her as an adversary and had an attitude towards her because of the visitation rules she imposed. And the supervisor testified that she chose to stop participating in the visits in part because of arguments with Bannick about the rules of visitation.

And even if Bannick were correct that substantial evidence does not support the findings based on the testimony of the teacher and supervisor, she does not explain why the trial court would not still have been justified in entering its residential plan. The trial court did not use the claimed misapprehended testimony to support its findings under RCW 26.09.191(3), any of which would justify restricting her residential time. Instead, the oral findings constituted part of its summation of the testimony at trial. The claimed double hearsay that the trial court relied on did go towards its abusive use of conflict finding—which Bannick does not challenge[9]—but the trial court relied on plenty of other factual evidence when it entered that finding. Even without an abusive use of conflict finding or a substance abuse finding, the trial court would still have been justified in adopting its residential plan based on its findings under RCW 26.09.191(3)(a), (b), and (f), as discussed above. And the trial court need not have accepted the recommendations of the GAL. In re Marriage of Magnuson, 141 Wn. App. 347,

---

[9] Unchallenged findings of fact are verities on appeal. Campbell, 166 Wn. App. at 469.

13

350, 170 P.3d 65 (2007) ("Trial courts have broad discretion and are not bound by GAL recommendations [in child placement decisions].").

Even if substantial evidence does not support the challenged oral findings, the trial court did not abuse its discretion in entering the residential plan.

E. Retention of Jurisdiction

The trial court retained jurisdiction over the matter after issuing the parenting plan. Bannick argues this retention was improper and would prevent her from having a new judge, even in a modification proceeding. We conclude the trial court did not abuse its discretion by retaining jurisdiction.

"Although express authority to retain jurisdiction is not provided by statute, authority to defer permanent decision-making with respect to parenting plans 'for a specified period of time' comes from the trial court's traditional equitable power derived from common law to act in the best interests of the child." In re Marriage of Rounds, 4 Wn. App. 2d 801, 805, 423 P.3d 895 (2018) (In re Marriage of Possinger, 105 Wn. App. 326, 336–37, 19 P.3d 1109 (2001)). We review for abuse of discretion a trial court's decision to retain jurisdiction. Id. at 804. We may affirm on any ground supported by the record. In re Marriage of Rideout, 150 Wn.2d 337, 358, 77 P.3d 1174 (2003).

In Rounds, we held the trial court did not abuse its discretion by indefinitely retaining jurisdiction to resolve any future disputes that arose under the parenting plan. 4 Wn. App. 2d at 802. We reasoned that the retention of jurisdiction was proper because the parenting plan was final, left no provisions open, and clearly defined the residential schedule. Id. at 806. The court rejected

the argument that retaining jurisdiction for more than a short period would undermine the statutory objectives of a parenting plan, since the trial court could not count on the parties to follow the plan peacefully. Id. at 806–07. The trial court found that the mother repeatedly manipulated others to gain advantage in litigation over the father, and that if she were free to take future parenting plan disputes to a judge unfamiliar with her history of manipulation, she would likely manipulate again. Id. at 804–05.

Here, as reflected in the trial court's oral ruling, it apparently retained jurisdiction for purposes of judicial economy.[10] The order retaining jurisdiction does not explain the retention's purpose, except to say retention is in the "interests of justice." As in Rounds, the trial court made a finding on Bannick's abusive use of conflict, but unlike in Rounds, it did not state that Bannick's prior actions motivated its decision to retain jurisdiction.

Bannick argues that since the parenting plan is not final and the residential schedule is not clearly defined, Rounds does not apply, and the trial court cannot retain jurisdiction. Contrary to her assertions, the residential schedule is, for the time being, clearly defined: Hammond is A.B.'s sole custodian. The parenting plan also purports to be final. And while the trial court did not state its reasons in the order retaining jurisdiction, it presumably could have retained jurisdiction for reasons like those in Rounds. Such reasons might include Bannick's history of abusive use of conflict, as well as the trial court's desire to oversee her

---

[10] The court stated, "But I'm not going to make another judicial officer spend the time and resources to get to know this case."

15

participation in reunification therapy. And we may affirm on any basis supported by the record. Rideout, 150 Wn.2d at 358. We conclude the trial court did not abuse its discretion by retaining jurisdiction.[11]

G. Fees

Bannick argues the trial court erred in awarding Hammond attorney fees and by ordering her to pay all the GAL's fees. We agree.

1. Attorney fees

Bannick argues that since the trial proceedings regarded a modification of the parenting plan, the trial court erred in using RCW 26.26B.060 as a basis for attorney fees, since RCW 26.09.140 is the proper statute for granting attorney fees in modification proceedings. She also argues that it constitutes reversible error for a court to award fees under this statute without making findings about the requesting party's financial need and the other party's ability to pay, and that the trial court did not make such findings.

Hammond petitioned to modify the parenting plan under RCW 26.09. RCW 26.09.140 governs awards of attorney fees in modification proceedings. In re Yeamans, 117 Wn. App. 593, 602, 72 P.3d 775 (2003). We review an award under this statute for an abuse of discretion. In re Marriage of Steadman, 63 Wn. App. 523, 529, 821 P.2d 59 (1991). RCW 26.09.140 requires the trial court to

---

[11] Also, the trial court's order of retention would not deprive Bannick of the right to a new judge if she petitioned to modify the parenting plan under RCW 26.09.260. See Rounds, 4 Wn. App. 2d at 807. Were she to so petition, a new proceeding would begin, and if the same judge presided over the new action, she would be "entitled to a new judge as a matter of right upon filing an affidavit of prejudice." Id. The trial court's order did not deprive her of this right.

consider the financial resources of both parties before making an award of fees. A lack of findings on financial resources requires reversal. In re Marriage of Scanlon and Witrak, 109 Wn. App. 167, 181, 34 P.3d 877 (2001) (reversing a denial of fees and remanding for consideration of a trial court fees request). It appears the trial court made no such findings, so we conclude the trial court abused its discretion and reverse the award of fees.

2. GAL fees

We review a trial court's order to pay GAL fees for an abuse of discretion. See In re Marriage of Bobbitt, 135 Wn. App. 8, 31, 144 P.3d 306 (2006). The trial court ordered Bannick to pay all the GAL's fees. Bannick argues that the trial court abused its discretion by ordering her to do so without making findings as to her financial resources as required by RCW 26.12.175(1)(d). The trial court made no such findings, so Bannick is correct. See Hardin v. Lofgren, noted at 3 Wn. App. at 1024, 2018 WL 1831136 at *14 (reversing an order to pay GAL costs where the trial court did not determine the parties' ability to pay and remanding so that the court could perform the proper analysis); but see GR 14.1 ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions."). We reverse the order requiring Bannick to pay the GAL's fees.

H. Different Judge on Remand

Bannick argues that given the trial court's efforts to retain jurisdiction over the matter and its exaggeration of the evidence against her, we should remand

17

this matter to a different judge and avoid the appearance of unfairness or bias against her. We disagree.

We may reassign a family law case on remand if the trial judge would exercise discretion on remand on the same issue triggering the appeal, and has already been exposed to prohibited information, expressed an opinion about the merits, or otherwise prejudged the issue. In re Marriage of Black, 188 Wn.2d 114, 137, 392 P.3d 1041 (2017) (citing State v. McEnroe, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). Reassignment "is available only in limited circumstances; even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if an appellate opinion offers sufficient guidance to effectively limit trial court discretion on remand." State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). "[W]here review of facts in the record shows the judge's impartiality might reasonably be questioned, the appellate court should remand the matter to another judge." Id.

We remand the parenting plan to the trial court, which will presumably fashion a new parenting plan. But the trial court would not use its discretion on the issue that mandated reversal—inclusion of the procedure allowing the parties to avoid the modification procedure of RCW 26.09.260.

And Bannick cannot reasonably question the trial court's impartiality. As discussed above, while, in certain oral findings, the trial court mistakenly attributed quotes to the kindergarten teacher and visitation supervisor, substantial evidence still supports the oral findings. Nor does she support her

concerns suggesting that the trial court on remand might suffer from "confirmation bias," raised for the first time in her reply brief.

We do not remand the parenting plan to a new judge.

We affirm in part, reverse in part, and remand for proceedings consistent with the opinion.  We also note that neither side is the prevailing party for the purpose of any fees incurred on appeal.[12]

_Chun, J._

WE CONCUR:

_____     _Leach, J._

---

[12] Under RCW 26.09.140, we may award fees to the party who substantially prevails on appeal.  State ex rel. M.M.G. v. Graham, 159 Wn.2d 623, 637–38, 152 P.3d 1005 (2007).